The Honorable Judge of the United States Court of Appeals, and for the 7th Judicial Subject. Fair game, fair game, fair game. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. We have nine cases on today's argument calendar, and we'll begin with Appeal 24-2464, Devonte Abbas v. City of Hobart. Good morning. Mr. Luarchik? Yes. May it please the Court, esteemed counsel. Today's case, first case, is about whether or not the City of Hobart can be held responsible for the constitutional violations under the 14th and 4th Amendment that Mike Klein endured at a police stop in 2019, and whether that occurs is under the framework provided in Monell v. Department of Social Security. Can I just clarify with you, please, before you go further? You are only suing the City of Hobart here, correct? Correct. You are not suing any of the individual officers? No. Okay. Thank you. You're welcome. The facts, if presumed in favor of my client, which we must do at this stage, which is summary judgment, are disturbing. In 2019, in January of 2019, my client was forcibly removed from a police car and stomped upon. All charges were voluntarily dismissed by the City. Four months later, in May of 2019, my client was driving in the city and he was being followed by a police car from the city for a mile, very closely. During that mile, by the officer's own admission, no violations occurred. After that mile, he drove off into a parking lot because he was understandably nervous, and he collected himself and drove back to his mother's. He missed his mother's turn initially because of his nervousness. The police officer here, Officer Kissy, curbed him, and the reason why he was curbed is contested. The reason the officer gave is a shifting reason. In some places, it's because he drove suspiciously, but ultimately the reason given was that he didn't use his turn signal correctly, which my client also denies. He says he used it well in excess of the 200 feet required under Indiana Code. After he was curbed, Officer Kissy came over and started to ask him questions, and my client recorded the conversation. Mr. Lewarchik, even if we accept and credit everything that you're saying, which you've laid out in your brief, if you return to Judge St. Eve's question, you have to show that the constitutional violation was committed by the defendant, not by one of its employees. Correct. I think the way that you're attempting to do that, in your brief anyway, because you have to, there's no vicarious liability under Monell, no respondeat superior liability, is by focusing, or at least in your argument, you reference a lack of training. Correct. What does the summary judgment record show regarding the content of the training that the City of Hobart provides to its officers? Both officers said in the eight years preceding the stop, they received no training on racial profiling. Does the record show more broadly what training they did receive? In other words, it's hard to believe that a municipality provides zero training to its police officers. The more narrow point you're making about being racially conscious and not discriminating, I understand, but does the summary judgment record inform us as to what training overall the officers receive? Yes. The officers, or Officer Kissy in particular, went into a description of what his training was, and he specifically said he never received any training on racial profiling. And that was echoed by the other officer at the scene. And assuming the facts in my client's favor, which I don't even think you have to do because they admitted they had no training, training was deficient. Continuing on with the facts, he was told to get out of his car. If we could please, I want to continue with your training theory, because you're seeking municipal liability based on a theory of lack of training, correct? Correct. And in order to get that, you have to show that there was a pattern of reckless conduct that the training was needed for. What kind of a pattern can you show here? You actually don't have to show a pattern under Monell if the risk of the constitutional violation that the defendant failed to provide training for is obvious. You're relying on Cannon for that, correct?  And Cannon is such an extreme case that, do you need Cannon to prevail here? No. I think JKJ also provides that. Let me rephrase that. Do you need to proceed under the so obvious standard in order to prevail here? No, I would argue that it's an alternative argument. Then your alternative would be to a pattern of criminally reckless conduct or pattern of reckless conduct. What evidence supports that there was a pattern of reckless conduct here that the Hobart should have been on notice that they needed training? Well, in both incidents, there was no form of accountability, no body cams, no dash cams. In the interest of time, we don't have a lot left. I don't mean to cut you off, but does the record support any other incidents along these lines other than your client's prior experience to show a pattern? These two instances? No, these are the two instances that was argued below. I was in trial counsel below, but those are the two instances. I would contend that racial profiling is so systemic in society. It's far more obvious than the fact patterns in Cannon and JKJ. You have to live in a cave not to understand that racial profiling is a systemic problem in society. There is a direct link between the Equal Protection Clause and Fourth Amendment arguments and the failure to train. These officers didn't know the boundaries of racial profiling. You would think that that's an obvious or inherently a truth that all officers should know without training, but it's not. Yesterday, I was listening to the radio, nerding out on NPR, and I found out that an ICE agent was interviewed and told the journalists that they don't target Caucasians. It's an ongoing problem, and it was an obvious problem and a predictable problem. It's in an urban setting. These officers are going to encounter people from different races, and so it's not something that the municipality here could just discard and blow off. Unless there's any other questions, I'd like to reserve my one minute and 41 seconds for any other questions. Very well. Okay, we'll hear from Mr. Friedman. Thank you. May it please the Court. Let me address initially the statement of facts by my student colleague. He talks about my client got stomped. He's referencing a January 2019 incident, and the Court is able to take judicial notice of the fact that that incident went all the way to a state court jury that found against Mr. Abbas. It was a defense finding on behalf of the city of Hobart. It was appealed to the Indiana Court of Appeals, which also upheld the city of Hobart. No liability in that case. So let's be clear. In this particular case, there's not even a physical encounter. We've got a 23-minute total stop at this point, and there is no issue of any kind of a physical encounter or anything else. And so as long as we're going to be referencing that January 2019, and it's referenced on page 18, 21, and 48, it's fair game. He's using it, of course, understandably, to try to set up a notion of a pattern, a practice, and he simply cannot indicate that because in the summary judgment record, there is no evidence in the record of any kind of pattern or practice of racial discrimination on the part of either Officer Kissy or the responding officer as well, Corporal Garber. Officer Kissy had had eight years with the department, no write-ups, no mention of any kind. We all know that in order to establish custom pattern practice, there's got to be some history of problems with this department, and respectfully, Your Honors, there's nothing in there. Is there any attempt to pursue discovery along those lines? It was very limited. The January 19 incident got bumped because it was time-barred, and so it was sent out by the federal district judge at that point, and so then they brought their state court claim. Even in this particular case, while they've alleged Fourth Amendment, Eighth Amendment, and Fourteenth Amendment, discovery was very limited, but there is nothing in the record at which the reviewing judge had to indicate any kind of pattern or practice of racially discriminatory activities on the part of the Hobart Police Department. As the court is aware— Mr. Friedman, what are you relying on as the basis for reasonable suspicion to pull the car over? The district court relied on the fact that he didn't properly use his signal. You seem in your brief to be relying more on the fact of the way he was driving and engaging in unusual behavior. As Your Honors are aware, it's got to be a reasonable suspicion of a traffic violation, not probable cause, and an objective basis for a reasonable belief, and that's fair. I think there were a number of things. Driving very slowly, number one. Out-of-state plates, number two. Based on this officer's experience, the turnaround in the apartment complex raised some suspicion, but the turn signal misuse is the key. The turn signal misuse is the key because we had the left signaling, then the right signaling, all of it done under the 200 feet required under state law at that point to make a turn signal decision. I think the reviewing judge, district court judge, found that helpful because, as the court is aware, you've got the two inquiries. Was it lawfully initiated? And once that's determined, was it unreasonably prolonged? Is there anything in the record that corroborates the turn signal not being done in a timely fashion? I know the officer testified to it, but the ticket or anything else, the arrest report, does anything support that? That's the problem. They don't even have a ticket. There's not an arrest. There's not even a warning. Twenty-three minutes, and certainly not unreasonable in terms of time. The canine was on scene within six minutes of initiating the stop, and there is no indication of any kind of prolonging it, but as a result, there's no ticket. What we've got is the officer indicating we had the turn signal issue. Was there any write-up of this at all? We've got his narrative that's in the record. That's correct. By narrative, is that something in written form? Yes. Okay, and does he indicate the turn signal in that narrative? Yes, he did. He did. He did. He was complete. He's a good officer. He really did it by the book, and despite counsel's efforts, there's no way he's able to turn what is essentially a sowser of a case into a silk purse. There was simply no constitutional violation in the initial stop. The queries for license or registration were appropriate. The request to step out of the car and move unrestrained at that point. The canine's external sniff of the car. The canine then had the positive alert, which then prompted the search of the car, and then there was a pat-down. One of the things they've complained about was the pat-down. Again, he followed standard procedure in terms of writing. I'm not sure why there's so much focus on whether there was a constitutional violation in this individual case because, as we've had confirmed, the police officer that affected the stop is not named as a defendant, and the only theory of liability is Monell. Right. And for better or worse, the justices have set the Monell standards pretty darn high. So isn't all of the discussion about the car stop neither here nor there? It is, but we've got to at least flesh out the record. But I would agree with Your Honor that when it comes to establishing a Monell violation, the bar is set high. And it would have helped them had they had any kind of evidence in the summary judgment record of lack of training, citations of the department, citations of other officers. Your Honor, respectfully, there is nothing in there. I can understand why Judge Lund did what she did because in terms of the Monell analysis, as the court is aware, I mean, you've got a member of the protected class, similarly situated, treated differently, show the decision-maker acted with discriminatory purpose and motive. Fortville teaches us that, your case, the Seventh Circuit case from 2011. It is a high bar, and you've got to show some intent. And so they're trying to bootstrap that January 19 incident and try to show that there was some sort of discriminatory intent on the part of the department. Different officers, different officers even responding at the January 19 versus the May 19. He's never received any kind of write-ups. And to indicate that in eight years there were no complaints of disparate treatment of black versus white motorists, I mean, if I'm making a Monell case, I've got to show some sort of a pattern, something in terms of a customer practice that has been enabled, authorized by the governmental entity and respectfully not. Counsel, something you said just caught my attention.  You said no complaints, no complaints against this particular officer? Yes, sir. Okay. You said a couple minutes ago that discovery was limited. Did plaintiffs seek discovery below on traffic stops by race for any period of time? Candidly, they went through a number of different counsel, and no, it was limited in terms of there's nothing in there. What they did seek evidenced nothing in terms of a pattern or a practice on the part of the department that would give cause for concern. But I guess my question is a little different. Did plaintiffs seek evidence discovery on a pattern for a particular period of time for the city of Hobart's police department? No. They did not? No. Okay. I mean, that's up to them. I can only— I understand, but I think counsel said he was in counsel below, so I thought you might know better. I got it. If you objected, for example— No, that's exactly right. Okay. No motions to suppress, no motions to limit discovery, but it's not our job to do their job. I mean— I understand. I'm just trying to understand what the record below and what was sought from the city.  Fair enough. Again, we think that with the record that's before the court, they've just not met that burden, which is very challenging to meet, as we all know, under Monell. And we would respectfully request a finding on behalf of the city of Hobart. Okay. Very well. Thank you. Thank you. Mr. Dworczyk, you have some time left. You're welcome to use it. I'll see if I can speak as fast as I can. I think the factual rendition forgets what Rule 56 requires because all of those factual assertions, every single one, was contested by my client, including the very important notion that he didn't turn his turn signal properly. That provides the basis for the Fourth Amendment violation, that by itself. And there was physical touching because my client said that his genitals were touched inappropriately. For goodness sakes, I mean, that's touching. And if you look at the event that preceded that, it seems to suggest pretext because the officer had him do this full-body search because he went into his pocket to get his insurance and registration. Could you imagine going through that? I've never had to go through a full-body search outside of my car because I reached into my pocket. And he was not able to identify any risk or any reasonable, identifiable reason why that search had to occur. Also, I think it's important. It seems as if we're forgetting that in JKJ, which this court determined in 2020 full en banc, that if the risk is obvious and there's a predictable harm, then you don't need a pattern. So I'm not just relying on Canton. I'm relying on Seventh Circuit law. It is entirely predictable that if officers do not receive racial profiling training, that incidents like this will occur. Thank you, Your Honor. You're quite welcome. Mr. Larchick, thanks to you. Mr. Friedman, thanks to you. We'll take the appeal under advisement.